# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Ishoo v. General Growth Properties, Inc.*, 2012 IL App (1st) 110919

| | |
|---|---|
| Appellate Court Caption | SUZANNA ISHOO, Plaintiff-Appellant, v. GENERAL GROWTH PROPERTIES, INC., GENERAL GROWTH COMPANIES, INC., NORTHBROOK COURT, L.L.C., NORTHBROOK COURT I, L.L.C., NORTHBROOK COURT II, L.L.C., NORTHBROOK COURT MALL, a/k/a Northbrook Court Shopping Center, THE MILLARD GROUP, INC., and MYDATT SERVICES, INC., a/k/a Valor Security Services, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-0919 |
| Rule 23 Order filed | January 1, 2012 |
| Rule 23 Order withdrawn | March 12, 2012 |
| Opinion filed | March 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the shoulder injury plaintiff suffered when she slipped and fell in a shopping mall, the entry of summary judgment for the mall owners was affirmed where the facts did not support plaintiff's claim that defendants breached their duty to plaintiff based on the alleged presence of a liquid on the floor, especially when no facts showed defendants had notice of the liquid or were responsible for its presence. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-128; the Hon. James D. Egan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael S. Hedrick, of Law Offices of Stephen G. Pinto, Ltd., of Chicago, for appellant. |
| | Chad J. Layton and Mitchell P. Morinec, both of Segal McCambridge Singer & Mahoney, Ltd., of Chicago, and Jason Orleans and Richard M. Tomich, both of Chilton Yambert & Porter LLP, of Waukegan, for appellees. |
| Panel | JUSTICE GARCIA delivered the judgment of the court, with opinion. Justices Lampkin and Palmer concurred in the judgment and opinion. |

## OPINION

¶ 1    The plaintiff, Suzanna Ishoo, brought a negligence action against the defendants, General Growth Properties, Inc.; General Growth Companies, Inc.; Northbrook Court, L.L.C.; Northbrook Court I, L.L.C.; Northbrook Court II, L.L.C.; Northbrook Court Mall, a/k/a Northbrook Court Shopping Center; The Millard Group, Inc. (Millard); Mydatt Services, Inc., a/k/a Valor Security Services (Valor); and Kone, Inc., seeking damages for injuries she sustained from a slip and fall at the Northbrook Court Mall (Northbrook Court), an indoor shopping mall. The circuit court granted the plaintiff's motion to voluntary dismiss Kone, Inc. The court granted summary judgment in favor of Westcoast Estates[1], Millard, and Valor,

---

[1]Westcoast Estates was never named as a defendant in this case; nor does the notice of appeal make mention of Westcoast Estates. However, Westcoast Estates filed an appearance jointly with The Millard Group, Inc.: "We hereby enter the appearance of Westcoast Estates, (improperly sued as General Growth Properties, Inc., General Growth Companies, Inc., Northbrook Court L.L.C., Northbrook Court I L.L.C., Northbrook Court II L.L.C., and Northbrook Court Mall a/k/a Northbrook Court Shopping Center) and The Millard Group, Inc. as defendants in the above-captioned cause." In its answer to the plaintiff's first amended complaint, Westcoast Estates identified itself as the owner of Northbrook Court.

from which the plaintiff appeals. We affirm.

¶ 2                                            BACKGROUND

¶ 3      On February 9, 2007, the plaintiff was working as a sales representative at the Neiman Marcus makeup counter in Northbrook Court. During a late afternoon break, the plaintiff and a coworker, Erica Lindsey, left Neiman Marcus to purchase a cup of coffee from the nearby Starbucks. As the plaintiff walked across the lower level of the mall while talking to Lindsey, she slipped and fell, injuring her right shoulder.

¶ 4      The plaintiff filed her initial complaint on January 7, 2009, alleging negligence and *respondeat superior* liability against the defendants. She claimed four acts of negligence by the defendants:

"a. Failed to maintain and keep the walkways free of slip hazards;

b. Failed to remove a slippery substance or water from the common walkway near the escalator at or near Neiman Marcus store after it knew or should have known of the presence of said slippery substance or water;

c. Failed to warn or post signs of said slippery substance or water after it knew or should have known of the presence of said slippery substance or water; and

d. Caused said slippery substance or water to be present on the surface of the walkway."

¶ 5      The plaintiff filed a second amended complaint, adding that each defendant had "exclusive management responsibilities and control over the property" and negligently maintained the property, causing her injuries.

¶ 6      In Valor's interrogatories, the plaintiff was asked to describe the condition or substance that purportedly caused her to fall and to state the length of time the condition existed. The plaintiff responded that her fall was caused by what "appeared to be oil or similar substance on the floor near the escalator." She asserted that "Maintenance should have known of the oil."

¶ 7      During the plaintiff's deposition, she testified that she and her coworker exited the Neiman Marcus store and were walking on the lower level of the mall near an escalator when she slipped and fell. According to the plaintiff, her feet "went up into the air" and she landed on her right shoulder. She stood up and had "some type of substance" on her hands and pants. The plaintiff stated the substance "smelled like solution, water, solution, cleaning solution, Windex." She saw "[s]ome type of liquid, water" on the floor after she stood up. The plaintiff could not recall the amount of liquid on the floor, but stated, "It wasn't a puddle." The color of the liquid was clear. She did not see any liquid on the floor before she fell. When asked if she could describe the substance, the plaintiff responded, "It was just liquidy. I don't remember the texture of it."

¶ 8      At the time of her fall, she did not see a cleaning cart or any bottles of cleaning solution in the area. The plaintiff did not know where the liquid substance came from but stated the janitorial services workers "are constantly cleaning the escalators and they're constantly spraying Windex and squeegeeing it." She did not observe any janitorial services workers

cleaning the escalators at the time of her fall.

¶ 9    The plaintiff immediately reported her fall to a security officer. She showed him the location of her fall. He took photographs of the floor where she fell. The plaintiff testified that she did not see any liquid substance on the floor when photographs of the floor were taken by the security officer. According to the plaintiff, she had liquid on the bottom of her pants. She did not report the incident to any other employee of the defendants.

¶ 10    The plaintiff was examined by a doctor at a hospital emergency room. She was given a sling for her shoulder, but no pain medication. The plaintiff did not recall whether the shoulder injury caused her to miss any work. Her doctor prescribed physical therapy. The plaintiff had arthroscopic surgery on her right shoulder in November 2007. She had a second shoulder surgery in April 2009 to repair a torn rotator cuff and torn labrum.

¶ 11    Bradley Frantom, the second-shift public safety supervisor at Northbrook Court employed by Valor, testified at his deposition that on February 9, 2007, he was on duty from 3 to 11 p.m. At about 4 p.m., he was called to a common area on the lower floor of Northbrook Court. Frantom interviewed the plaintiff as part of his investigation of the incident. The plaintiff stated she fell because there was "something slippery or wet" on the floor. The plaintiff did not tell Frantom that the "something slippery or wet" smelled like cleaning solution. Frantom stated the plaintiff may have complained of pain in one of her ankles, but he did not recall the plaintiff complaining of any pain in her shoulder. Frantom did not observe any wet spots on the plaintiff's pants. During the course of this interview, the plaintiff's coworker confirmed to Frantom that the plaintiff fell.

¶ 12    Frantom and another public safety officer, Flynn Gallagher, searched the area where the plaintiff fell for any hazards, but were unable to find any liquid substance on the floor. According to Frantom, the plaintiff and her coworker also searched for a liquid substance on the floor, but found nothing. Gallagher completed an accident report and took photographs of the floor where the plaintiff stated she fell. When he examined the photographs, Frantom saw no liquid substance on the floor. The plaintiff was also shown these photographs; she did not see any liquid substance on the floor in the photographs.

¶ 13    Ruben Ramirez, a Millard employee, and the project manager in charge of housekeeping at Northbrook Court, testified at his deposition that he recognized the plaintiff as an employee of Neiman Marcus. On February 9, 2007, Ramirez was called by security personnel to check the area for hazards where the plaintiff fell. When Ramirez and his assistant, Gloria Melgar, arrived at the area of the incident, the plaintiff was not there. Ramirez and Melgar found no liquid substance on the floor where he was told the plaintiff fell.

¶ 14    Ramirez acknowledged that the goal of the housekeeping is to keep the mall immaculately clean. The housekeeping porters carry brooms, rags, and a spray bottle of cleaning solution, which is light blue in color, to clean the common areas. Porters are trained to check for hazards on the floors. Escalators are wiped down with cleaning solution after 9 p.m. when the escalators are no longer in operation.

¶ 15    On the date of the incident, Israel Escamilla and Columba Estela served as porters and were responsible for the common areas from 10 a.m. to 3:30 p.m. Every 30 minutes, the two

porters took a lap around the mall to clean the common areas. The porters also complete a "sweep sheet" and a "spill/wet floor log" for the common areas of Northbrook Court. Escamilla was assigned to clean the area of the mall near Neiman Marcus, where the plaintiff fell. According to Ramirez, Escamilla would have checked the area around Neiman Marcus five times between 10 a.m. and 3:30 p.m. The "sweep sheet" for February 9, 2007 indicated that Escamilla checked and swept the corridors at 3:30 p.m. and reported no problems. The "spill/wet floor log" for the same date showed security personnel reported a spill by Neiman Marcus at 4:15 p.m. The report stated that nothing was found on the floor at that location.

¶ 16    On August 23, 2010, Westcoast Estates, Millard, and Valor moved for summary judgment, arguing the plaintiff's claim amounted to nothing more than speculation that her fall was caused by a liquid substance on the floor and that the defendants could not have had actual or constructive notice of the presence of any such alleged substance. In her response to the summary judgment motions, the plaintiff attached her own affidavit in which she averred that her accident occurred between 3:30 p.m. and 3:45 p.m. Her affidavit asserted, "I cannot state exactly when or how the Windex came to be on the floor, but I can absolutely state with certainty that it was Windex or a similar cleaner or water mixed with a cleaning solution that caused me to fall."

¶ 17    On December 20, 2010, the circuit court granted summary judgment to each of the defendants, Westcoast Estates, Millard, and Valor. The plaintiff's motion to reconsider was denied on March 1, 2011. The plaintiff timely appeals.

¶ 18                                          ANALYSIS

¶ 19    The plaintiff correctly acknowledges in her main brief that "[s]ummary judgment should be granted only when the pleadings, depositions, and admissions on file reveal that there is no disputed genuine issue of material fact and the moving party is entitled to judgment as matter of law." The plaintiff further asserts that "evidentiary inferences in favor of the opponent are mandatory in deciding a summary judgment motion." She contends she is entitled to have a jury resolve her claim against the defendants. The plaintiff grounds her claim on the inference she draws from the established facts, that "according to Ramirez, *** the housekeeper, between 3:00 and 3:30, cleaned the escalator with cleaning solution or glass cleaner and then squeegeed the excess solution off the escalator and onto the floor."

¶ 20    Each defendant relies on *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813 (1981), for its contention that summary judgment was properly entered. Valor asserts, "Plaintiff's varied claims as to what caused her to fall were purely speculative and subject to summary judgment." Millard contends, "summary judgment is appropriate where the Plaintiff does not know why she fell."

¶ 21    To establish negligence on the part of the defendants, the plaintiff need only bring forth facts that her fall was caused by a liquid substance on the floor attributable to the defendants. Liability on the part of the defendants may arise if (1) one or more defendants is directly responsible for the liquid substance on the floor or (2) the defendants had actual or constructive notice of the liquid substance on the floor. Because no defendant questions that the plaintiff fell in Northbrook Court and the credibility of the plaintiff's claim that her fall

was caused by a liquid substance on the floor cannot be decided in a summary judgment motion, this appeal turns on whether there is any evidence that directly proves, or gives rise to a reasonable inference, that the presence of the liquid substance on the floor is tied to one or more of the defendants.

¶ 22    We agree with the plaintiff that her case is unlike *Kimbrough*, where the plaintiff "stated repeatedly in her deposition that she did not know why she fell." *Id.* at 817. While the defendant in *Kimbrough* did not dispute that "grease" spots were in the area where the plaintiff fell, the plaintiff never stated that "she had stepped on [the grease spots]." *Id.*

¶ 23    Here, the plaintiff consistently testified that she stepped on a liquid substance on the mall floor, which caused her to fall and suffer an injury to her shoulder. We agree with the plaintiff that if the facts in the record point to the defendants as being responsible for the liquid substance on the floor, either directly or by reasonable inference, the plaintiff is entitled to submit her claim to a jury.

¶ 24    The gap in the plaintiff's claim, however, is that no facts exist to connect the defendants to the presence of the liquid substance on the floor. Nor do the established facts support the inference, as claimed by the plaintiff, that "the housekeeper, between 3:00 and 3:30, cleaned the escalator with cleaning solution or glass cleaner and then squeegeed the excess solution off the escalator and onto the floor."

¶ 25    Ramirez stated unequivocally that the escalator is never cleaned until after 9 p.m., when the mall is closed. The plaintiff points us to no contrary fact. Nor did the plaintiff in her counteraffidavit to the summary judgment motions contest Ramirez's averment. Without facts that the housekeeping staff were responsible for the liquid substance on the floor, no facts support the plaintiff's claim of negligence against the defendants.

¶ 26    In an effort to remedy this deficit in the facts of this case, the plaintiff contends that the defendants had actual or constructive notice of the liquid substance on the floor. The plaintiff is correct that sufficient notice of a dangerous condition may give rise to a breach of duty by the defendants if the condition is left uncorrected. See *Cochran v. George Sollitt Construction Co.*, 358 Ill. App. 3d 865, 873 (2005) (citing Restatement (Second) of Torts § 343 (1965)).

¶ 27    However, under the facts of this case, actual notice can only be established by a showing that the housekeeping staff "squeegeed" cleaning solution from the escalator onto the floor. As we have already concluded, no facts exist that the activities of housekeeping staff were responsible for the liquid substance on the mall floor. It follows from the absence of such facts that no actual notice on the part of the defendants of the presence of the liquid on the floor can be shown.

¶ 28    The plaintiff's fallback position is that the record supports an inference of constructive notice on the part of the defendants. Once again, we disagree. Constructive notice can only be shown where the dangerous condition is shown to exist for a sufficient length of time to impute knowledge of its existence to the defendants. *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1065-66 (2001). Here, there are no facts that show the length of time the liquid substance was on the floor. While the plaintiff claims that the liquid substance was "squeegeed" onto the floor between 3 p.m. and 3:30 p.m., nothing in the record supports that

claim. Constructive notice cannot be shown on the record before us.

¶ 29                                  CONCLUSION

¶ 30        We affirm the circuit court's grant of summary judgment to the defendants, Westcoast Estates, Millard, and Valor. The facts of record do not support a claim that the defendants breached their duty to the plaintiff based on the presence of liquid on the floor when no facts demonstrate that the defendants were responsible for the liquid on the floor or that they had notice of its presence.

¶ 31        Affirmed.