2019 IL App (1st) 181337
No. 1-18-1337
Opinion filed August 14, 2019

THIRD DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| DEBRA HASLETT, | ) |
| | ) Appeal from the Circuit Court |
| | ) of Cook County, Illinois, |
| Plaintiff-Appellant, | ) County Department, |
| | ) Law Division. |
| | ) |
| v. | ) No. 15 L 8316 |
| | ) |
| UNITED SKATES OF AMERICA, INC., | ) The Honorable |
| CHICAGO CITY SKATING, LLC, and MILTON | ) John H. Ehrlich, |
| TORRENCE, | ) Judge Presiding. |
| | ) |
| Defendants-Appellees. | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal stems from a negligence cause of action filed by the plaintiff, Debra Haslett, against the defendants United Skates of America, Inc. (United Skates), Chicago City Skating LLC (Chicago Skating), and Milton Torrence, after she slipped and fell at a roller skating rink. The plaintiff alleged that she was injured as a result of the defendants' negligent failure to notice and remove a piece of hard candy on the rink surface, which caused her to fall. The circuit court entered summary judgment in favor of the defendants, holding that there was no evidence that the defendants had any notice of the alleged hazard or that this hazard was the cause of the

plaintiff's fall. On appeal, the plaintiff argues that the trial court erred when it granted summary judgment in favor of the defendants because there remain genuine issues of material fact as to whether the defendants breached their duties to her and whether that breach proximately resulted in her injuries. In this respect, the plaintiff contends that the trial court erred in refusing to draw an adverse inference from the defendants' responses to discovery, which failed to include a video clip that the plaintiff believes would have shown the cause of her fall. The plaintiff also contends that the trial court erred when it denied her leave to amend her complaint for a third time. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3        The record below reveals the following undisputed facts and procedural history. On July 13, 2015, the plaintiff was a roller skating customer at the Dr. Martin Luther King Jr. Park and Family Entertainment Center (the roller skating rink) in Chicago, which was co-owned, managed, operated, and controlled by the defendants, United Skates and Chicago Skating. The defendant, Torrence, was the assistant manager of the roller skating rink and an employee of United Skates. On July 13, 2015, while roller skating, the plaintiff fell injuring her back.

¶ 4        On August 14, 2015, the plaintiff filed her original complaint against United Skates and Torrence, alleging negligence, and violations of the Roller Skating Rink Safety Act (745 ILCS 72/1 *et seq.* (West 2014)). On October 15, 2015, she filed her first amended complaint, adding as an additional defendant, Chicago Skating.

¶ 5        On February 16, 2016, the plaintiff filed the instant second amended complaint, alleging only "negligence" against the three defendants. Therein, she alleged that on July 13, 2015, she was a "business invitee" of the roller skating rink and that she fell as a proximate result of the defendants' breach of the following duties: (1) to reasonably inspect and monitor the skating

surface to ensure that it was free from defects and foreign objects; (2) to have adequately trained floor guards to direct and supervise skaters, watch for foreign objects that may have fallen on the floor, and use reasonable care in their duties; (3) to maintain the skating surface in a reasonably safe condition and clean and inspect the skating surface before each session; (4) to supervise and operate the roller skating rink in a reasonably safe condition to ensure the floors were clean; (5) to warn any participants of unforeseen dangers; and/or (6) to have adequate lighting necessary to see any defects and foreign objects on the skating surface.

¶ 6        After the defendants filed their answer and affirmative defenses, alleging assumption of risk and comparative negligence, the case proceeded with extensive discovery, during which, *inter alia*, the following individuals were deposed: (1) the plaintiff; (2) the plaintiff's grandson, Elijah Goshay (Elijah); (3) the plaintiff's granddaughter, Jada Goshay (Jada); (4) the plaintiff's husband, Charles Estes; (5) two of the plaintiff's sisters, Juanita Cunningham and Patricia Haslett (Haslett); (6) the defendant Torrence; (7) the general manager of the roller skating rink, Tenesha Taylor; and (8) one of the roller skating rink floor guards, Kyle Barnett.

¶ 7        For purposes of brevity, we set forth only that deposition testimony relevant to the disposition of this appeal.

¶ 8        The plaintiff testified that she has roller skated since she was five years old and that she is an expert skater. The plaintiff averred that she was very familiar with the roller skating rink because she skated there at least once a week for many years. On June 13, 2015, together with two of her grandchildren, Elijah and Jada, the plaintiff attended her nephew's kindergarten graduation party at the roller skating rink. She brought and wore her own skates for the occasion. Those skates had been purchased in 2013 and had no toe stops in the front because, as an expert skater, the plaintiff could stop simply by sliding sideways.

¶ 9    According to the plaintiff, when she arrived at the skating rink, she waited for the rink to open. She saw no one on the rink floor and no one sweeping or cleaning it. When the next "all skate" session was announced she was the first to enter the rink. There were two floor guards on the floor. The plaintiff skated counterclockwise for about 10 minutes and completed at least one turn before she "just all of a sudden fell" backwards seriously injuring her back. The plaintiff stated that she did not run into anyone and was not shoved, pushed, or pulled from behind and made no contact with any other skater before she fell.

¶ 10    The plaintiff averred that she fell because she rolled over a piece of hard candy. The plaintiff, however, could not state how large the candy was, for how long that candy had been on the rink floor before she tripped over it, where it came from, or how it got there. She acknowledged that she never saw the candy before or after she fell but stated that she "felt rolling over something." The plaintiff admitted that she did not see any object that she could have tripped over on the rink floor either before or after she fell, even though she had skated in that same area when making her first circle around the rink. As the plaintiff averred, "the candy had to be invisible." When asked to explain how she knew that she fell over a piece of candy, the plaintiff stated that after she had been taken to the hospital her sister told her that "this is what they got off her skates." The plaintiff acknowledged that at the time of her fall, no one told her that she had tripped over a piece of candy, and she herself never looked at her skates to determine whether there was anything stuck to them. The plaintiff also admitted that she never told any of the rink employees that she rolled or fell over something while skating but averred that she failed to do so because she was in too much pain. She also denied ever having told any of the employees at the rink that she fell because a "boy cut her off" while skating.

¶ 11        After falling, the plaintiff felt her back "break," experience excruciating pain and was unable to breathe. She lay on her stomach, calling for help and asking that her skates be taken off. After a floor guard approached to help and take off her skates, the plaintiff was transported to the hospital. The plaintiff's mother retrieved the skates from the floor guard, put them in the plaintiff's bag, and returned them to the plaintiff's house. The plaintiff did not see her skates until at least three days later when she returned home from the hospital. She could not state exactly when she inspected her skates but admitted that she did not inspect them immediately upon her release home. Rather, sometime later, when she was moving things around her house, she looked at the skates and noticed "red crumbled up" pieces of candy on the front wheels. The plaintiff believed these came from hard red Jolly Rancher candy. She, however, did not take photographs of the skates and had no personal knowledge as to how or when the candy pieces got onto the wheels.

¶ 12        In his deposition, the plaintiff's grandson, Elijah, testified that on July 13, 2015, he attended the graduation party at the roller skating rink with his grandmother. Elijah was eating pizza at one of the tables next to the roller skating rink floor, when he learned that the plaintiff had fallen. He was facing away from the skating floor and did not see the plaintiff fall or anything that may have caused her to fall. After he went onto to rink floor to help the plaintiff, Elijah did not see any candy there. He also never heard anyone at the rink say anything about candy causing the plaintiff's fall. The first time he heard anything about candy was when he was at the hospital where the plaintiff's husband, Estes, told him that the plaintiff had fallen on candy. Elijah admitted that he has no personal information or knowledge of the candy and does not know what caused the plaintiff to fall.

¶ 13    In her deposition, the plaintiff's granddaughter, Jada, stated that, together with her grandmother, on July 13, 2015, she attended the graduation party at the roller skating rink. She was going to get a slushy and was looking for her brother, Elijah, when she learned that the plaintiff had fallen. She did not see the plaintiff fall. She went onto the rink floor and saw the plaintiff on the floor, and Elijah next to her trying to help. Jada did not see anything on the rink surface that might have caused the plaintiff to fall and does not know what caused her to fall. Jada vaguely recalled hearing that the plaintiff fell because she was "cut off by a boy while skating." However, she could not remember when or from whom she had heard this.

¶ 14    In his deposition, the plaintiff's husband, Estes, testified that prior to the incident he had skated many times at the roller skating rink with the plaintiff. He explained that the plaintiff's passion was roller skating and that she was an excellent skater who never fell. Estes acknowledged that he did not attend the plaintiff's nephew's graduation party and was therefore not present when the plaintiff fell. He learned of her fall from one of the plaintiff's family members who had telephoned to say that she had fallen on some candy or "something." Estes could not remember which family member had telephoned. After he learned of the accident, Estes immediately went to the roller skating rink and then accompanied the plaintiff to the hospital. He averred that the plaintiff was in excruciating pain and that at that time he was not concerned with what had caused her to fall but rather with getting her immediate treatment. The plaintiff later told Estes that she fell over something and that others had told her that it was a piece of candy.

¶ 15    In her deposition, one of the plaintiff's sisters, Cunningham, who hosted the graduation party, testified that she was at the concession stand when she learned of the plaintiff's fall. She

did not see the fall and did not know what caused it. When Cunningham rushed onto the floor to help the plaintiff, she did not see "any candy or anything on the floor."

¶ 16    In her deposition, another one of the plaintiff's sisters, Haslett, testified that she did not attend the graduation party at the roller skating rink and therefore did not see the plaintiff fall. She learned of the fall on that same afternoon, when a family member telephoned her to inform her that the plaintiff was in the hospital. Haslett immediately went to the hospital to see her sister. According to Haslett, at that time, the plaintiff told her that she fell because "some boy grabbed her" and she "tripped." Haslett was asked to watch several surveillance videos from the roller skating rink and admitted that in those video clips she could not see anyone who grabbed the plaintiff.

¶ 17    In his deposition, the defendant, Torrence, testified that on the day of the incident, he was the assistant manager of the roller skating rink. He was employed by the defendant United Skates but paid by the defendant Chicago Skating. Torrence was trained in the Roller Skating Association standards and agreed that under those standards the skating surface must be clean and free of debris at all times. He also agreed that floor guards are responsible, *inter alia*, for monitoring the skating floor and making sure that the floor is free from debris both before and during any skating session. Torrence stated, however, that a floor guard is responsible for picking up only those items that he or she sees on the rink floor.

¶ 18    According to Torrence, on July 13, 2015, before the plaintiff fell, the roller skating rink had been swept and checked to make sure it was clear of debris. At the time of the plaintiff's fall, Torrence was in the front office. After learning of the fall, he went onto the skating rink floor, which had already been cleared of other skaters by the deejay. As he approached the scene, he saw the plaintiff lying on her stomach, surrounded by family members, complaining of severe

pain. One of the floor guards, Barnett, was assisting the plaintiff in removing her skates. Torrence immediately inspected the area for any debris but found the floor to be clean, dry, and devoid of any foreign objects. Torrence asked the plaintiff's family members to help him fill out an incident report by writing down the plaintiff's name and contact information on the form. He then spoke to the plaintiff to determine what had happened. The plaintiff told Torrence that a young boy had cut her off. Torrence included this information in his incident report. He acknowledged that the plaintiff never signed the incident report and that the report itself notes that her signature is missing because she was "in too much pain to sign."

¶ 19       Torrence acknowledged that he did not inspect the plaintiff's skates but explained that she was wearing her own skates, which were her own personal property. In addition, Torrence stated that he had no reason to inspect the skates because the plaintiff never told him that she had tripped over anything, let alone on a piece of candy. In addition, no employee told him anything about seeing any candy on the floor either before or after the plaintiff fell, and no foreign objects were removed from the floor on that day.

¶ 20       Torrence acknowledged that the roller skating rink sells candy but did not know if it sold hard candy. Torrence also acknowledged that patrons are permitted to bring their own cakes and party favor bags, which may or may not include hard candy. He testified, however, that the rink has a strict policy forbidding any food and beverages on the skating floor. Torrence identified a photograph of a large sign that was posted inside the roller skating rink building on the date of the plaintiff's fall, which informed customers that: "All food and beverages must be kept in the concession seating area." According to Torrence, both rink security and the floor guards were responsible for enforcing this rule.

¶ 21    In her deposition, Taylor averred that on the date of the plaintiff's fall, she was the general manager at the roller skating rink and had worked at the rink for 10 years. She was employed by United Skates but her paychecks were issued by Chicago Skating. She supervised the assistant manager, Torrence; the deejays, Bruce Shaw and Charles Robinson; and all of the floor guards, including Barnett. Taylor explained that the deejays were responsible for rink floor safety because they controlled the floor. In addition to playing music, the deejays acted as floor guards and directly supervised the remaining floor guards inside the rink.

¶ 22    Taylor acknowledged that the defendants were responsible for maintaining a safe and clean floor surface free from foreign objects. In this regard, she averred that the floor was swept daily before and after every skating session and then inspected by the assistant manager after each sweep and before each session. In addition, patrons were not allowed to bring items onto the floor that could be easily dropped and were forbidden from chewing gum in the entire facility. According to Taylor, if by any chance items were dropped onto the floor during a skating session, the floor guards and the deejay were responsible for removing them as soon as the items were observed.

¶ 23    On the date of the plaintiff's fall, Taylor was not inside the roller skating rink building and therefore did not witness the fall. Any knowledge and opinion that she could give regarding the fall was based on her later review of the roller skating rink's surveillance videos of the incident. Taylor acknowledged that she personally compiled seven video clips that were produced by the defendants during discovery and that those clips were obtained from somewhere between five and seven rink cameras that were operational that day. She testified that the cameras ran 24 hours a day but that she compiled only those videos that related to the plaintiff's fall. She also acknowledged that none of the video clips she compiled contain the footage of the

moment immediately preceding the plaintiff's fall, which could have shown the cause of that fall. Taylor explained, however, that the far right camera across from the deejay booth, closest to the plaintiff's fall, was broken that day. She also averred that there may have been angles of the rink floor that could not be captured by any of the rink floor cameras even if operational. Taylor, who no longer worked for the roller skating rink, did not know for how long video surveillance footage was kept and whether the footage of the entire day from all of the cameras was still available.

¶ 24    Taylor testified that based on her review of the seven video clips, prior to the 3:30 p.m. skating session, the floor was swept by Shaw at about 3:15 p.m. After that, Torrence would have walked the floor to inspect it. In Taylor's opinion, during the skating session, the floor was safe because there were three floor guards including the deejay, Robinson, who were inspecting the floor at all times.

¶ 25    When Taylor returned to the roller skating rink at around 5 p.m. the session had already ended. She inspected the rink floor before the next session and saw no evidence of any candy on the floor. From what she read in the incident report and the employee statements, neither the plaintiff nor anyone else mentioned seeing candy on the floor or related the plaintiff's fall to any candy. In addition, Taylor did not observe any candy on the surveillance videos of the fall.

¶ 26    She acknowledged that in viewing those videos, she also could not see anyone bumping into or grabbing the plaintiff before she fell. Taylor opined, however, that based on the video footage, and the backwards angle of the plaintiff's fall, the plaintiff could not have fallen over candy. Taylor also affirmatively stated that the rink does not sell any hard candy, including Jolly Ranchers.

¶ 27     In his deposition, Barnett testified that he was one of the floor guards at the rink on the day that the plaintiff fell. He acknowledged that, as a floor guard, he was trained to make sure that the rink floor was clean at all times. While on the floor, he would routinely check for debris and if he saw anything would immediately remove it.

¶ 28     Barnett testified that he did not see the plaintiff fall because his back was turned to her as he was making sure that several smaller children were closer to the middle of the rink. When Barnett turned around, he noticed "people surrounding someone who was lying down on the floor" and immediately approached to assist. Barnett immediately approached the plaintiff, unlaced her skates, and briefly inspected the floor around her. He asked the plaintiff what had caused her fall, and she stated that "a kid had caused her to fall." Barnett averred that the plaintiff never told him that she rolled over a piece of candy. At Torrence's instruction, Barnett wrote a statement detailing his interaction with the plaintiff. He denied that Torrence told him what to write in that statement and averred that he only wrote down what the plaintiff reported.

¶ 29     Barnett further testified that the rink floor was clean and in good repair at the time of the plaintiff's fall. It was swept before the beginning of the skating session. As a floor guard, during the skating session Barnett was on constant lookout for candy and other objects on the floor but saw nothing that could have caused the plaintiff to fall. Although many skaters skated in the area of the plaintiff's fall, no one fell over or complained about any foreign object, including candy, there, and Barnett saw none.

¶ 30     Barnett further explained that the skating rink does not sell hard candy, including Jolly Ranchers, and that it explicitly prohibits customers from taking hard candy and gum onto the rink floor.

¶ 31      After discovery, the defendants filed a motion for summary judgment arguing that there was no evidence that they had been negligent in any way that caused the plaintiff to fall. In particular, they argued (1) that no witness had testified to personal knowledge of hard candy anywhere at the rink and (2) that there was no evidence that the defendants had actual or constructive notice of any such hazard. They further maintained that there was no evidence that their employees were to blame for placing any such hazard on the rink floor and emphasized that the plaintiff presented no evidence as to how long any such hazard might have been there. In addition, the defendants argued that there was no evidence to suggest that Torrence owed any duty to the plaintiff in any individual capacity or that he had breached that duty.

¶ 32      The trial court *sua sponte* granted the motion for summary judgment before that motion was fully briefed by all of the parties. Upon the plaintiff's objection, the court vacated its order, and gave the plaintiff time to file her response.

¶ 33      In her response to the motion for summary judgment, the plaintiff argued that the defendants' employees had not adequately watched the surface of the rink floor. She maintained that another patron must have dropped a piece of hard candy onto the rink floor and that the defendants had been negligent in failing to notice or remove it. The plaintiff also argued, for the first time, that the defendants' response to her discovery request for production had been incomplete, in that they had not produced video footage for the entire day that she fell, including video footage of the minutes preceding her fall, which could have conclusively established the reason for that fall. She contended that this incomplete production called for an adverse inference.

¶ 34      On March 2, 2018, the trial court granted the defendants' motion for summary judgment. In doing so, the trial court found that there was no evidence that the defendants had actual or

constructive notice of "any type of defect on the floor, whether it be a piece of candy or anything else." As the court stated:

> "The plaintiff hasn't provided any other information to indicate that there was something there and that someone had complained about it, for example to the proprietor prior to [the plaintiff's] fall, which would be necessary to establish some sort of actual notice on their part."

¶ 35    The court further held that even if there had been a piece of candy that caused the plaintiff to fall, there was no evidence that the defendants had constructive notice of it. Emphasizing the plaintiff's own description of the candy as "invisible," the court noted that there was no evidence of how long it had been on the rink surface and held that without evidence that it had been there long enough for the defendants to do something about it, the plaintiff could not prove constructive notice.

¶ 36    The plaintiff filed motions to reconsider and for leave to file a third amended complaint, both of which were denied. The plaintiff now appeals.

¶ 37                                    ANALYSIS

¶ 38    On appeal, the plaintiff first contends that the trial court erred when it granted summary judgment in favor of the defendants. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016); see also *Epple v. LQ Management, LLC*, 2019 IL App (1st) 180853, ¶ 14; *Carlson v. Chicago Transit Authority*, 2014 IL App (1st) 122463, ¶ 21; *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). In determining whether the moving party is entitled to summary judgment, the court

must construe the pleadings and evidentiary material in the record in the light most favorable to the nonmoving party and strictly against the moving party. *Epple*, 2019 IL App (1st) 180853, ¶ 14; see also *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002). A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts. *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010); see also *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof and may meet it either "by affirmatively showing that some element of the case must be resolved in [her] favor or by establishing that there is an absence of evidence to support the nonmoving party's case." (Internal quotation marks omitted.) *Epple*, 2019 IL App (1st) 180853, ¶ 15. Our review of the trial court's entry of summary judgment is *de novo*, and we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. See *Epple*, 2019 IL App (1st) 180853, ¶¶ 14-15; see also *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 39     Where, as here, a plaintiff seeks recovery based on a defendant's alleged negligence, the plaintiff must establish (1) the existence of a duty owed by the defendant, (2) a breach of that duty, and (3) an injury proximately caused by that breach. *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 2011 IL App (1st) 092860, ¶ 14. The defendants here do not dispute that, as business owners, they owe a duty to its patrons, as business invitees, " 'to

exercise ordinary care in maintaining their property in a reasonably safe condition.' " See *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 29.[1]

¶ 40       Illinois follows section 343 of the Restatement (Second) of Torts (Restatement). *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 486 (1976). According to the Restatement, a possessor of land has a duty to remand or warn of a dangerous condition on its property if (1) the condition presents an unreasonable risk of harm to people on the property, (2) the defendant knew or in the exercise of ordinary care should have known both of the condition and the risk, and (3) the defendant could have reasonably expected that people on the property would not realize the danger or would fail to protect themselves against such a danger. Restatement (Second) of Torts § 343 (1965).

¶ 41       Accordingly, our courts have repeatedly held that a business owner breaches its duty to an invitee who slips on a foreign object in three circumstances: (1) where the object was placed there by the negligence of the proprietor; (2) his servants knew of its presence; or (3) the object was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered (*i.e.*, the proprietor had constructive notice of the object). *Milevski*, 2018 IL App (1st) 172898, ¶ 29 (citing *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001)); see also *Hayes v. Bailey*, 80 Ill. App. 3d 1027, 1030 (1980); *Olinger v. Great Atlantic & Pacific Tea Co.*, 21 Ill. 2d 469, 474 (1961). In addition, "[l]iability cannot be based on guess, speculation, or conjecture as to the cause of the injury." *Newsom-Bogan*, 2011 IL App (1st) 092860, ¶ 16.

---

[1]We note that in her brief the plaintiff argues that, for various reasons, the duty of care imposed on roller skating rinks should be heightened and, among other things, include failure to anticipate negligent acts and dangerous activities of third parties. While we disagree with this proposition, we need not delve into it any further since for the reasons that shall be articulated in detail, regardless of the level of duty owed, we find that summary judgment was proper because the plaintiff here failed to establish both breach of any such duty and proximate causation.

¶ 42    In the present case, after a review of the record, we conclude that the trial court properly granted summary judgment in favor of the defendants because the plaintiff failed to demonstrate that the defendants breached their duty to her and that any such breach proximately caused her injury.

¶ 43    In this respect, we first note that despite her repeated claims that she fell over a piece of hard candy, the plaintiff failed to present any evidence whatsoever of the existence or presence of any such hazard on the rink floor. It is well settled that at a bare minimum, a plaintiff who claims to have been injured by a hazard on the defendant's premises must prove the existence of the hazard itself. See *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1072 (1994). In the present case, not one witness testified to seeing hard candy or any other kind of hazard on the rink floor either before or after the plaintiff fell. Nor did any witness testify to seeing hard candy anywhere else in the facility on the day of the incident. While the plaintiff contends that, once at the hospital, one of her sisters told her that she fell over a piece of hard candy, the record reveals that neither of her sisters testified to that effect. Even if they had, however, such testimony regarding what they would have told the plaintiff unmistakably would have constituted inadmissible hearsay, which may not be offered in opposition to summary judgment. See *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 973-74 (1990) (holding that the plaintiff's affidavit regarding the decedent's statements about slipping on the shower floor and the slippery condition of that floor, which had caused his injury, were inadmissible hearsay where the plaintiff had no personal knowledge of the cause of the decedent's fall, requiring the entry of summary judgment in favor of the defendants); see also *Johnson v. Owens-Corning Fiberglass Corp.*, 284 Ill. App. 3d 669, 679 (1996) (holding that the plaintiff's interrogatory answer was inadmissible hearsay that could not defeat a motion for summary judgment).

¶ 44     While it is true, as the plaintiff points out, that the presence of a hazardous condition may be proven by circumstantial evidence (see *Barker*, 261 Ill. App. 3d at 1072), here, the sole circumstantial evidence offered by the plaintiff is her assertion that at some point after she left the hospital, at least three days after her injury, she inspected her roller skates and discovered that the front wheels contained "red crumbled up" pieces of Jolly Rancher candy. Even taking, as we must, this evidence in the light most favorable to the plaintiff, we are not persuaded that a jury could reasonably infer from it that there was candy on the roller skating rink floor at the time and place of the plaintiff's fall or, for that matter, that her fall resulted from any contact with that candy. Because in her own deposition, the plaintiff admitted that she wore her own roller skates to the rink and that she did not inspect those skates for at least three days after her fall, we have no way of knowing when or how the crumbled pieces of candy got onto her skates and whether or not they had anything to do with her fall. Accordingly, in this instance, " '[t]he mere possibility of a causal connection' " offered by the plaintiff's circumstantial evidence is " 'insufficient to raise the requisite inference of fact.' " *Barker*, 261 Ill. App. 3d at 1072 (quoting *Housh v. Swanson*, 203 Ill. App. 3d 377, 381 (1990)).

¶ 45     In coming to this conclusion, we find the decision in *Barker*, 261 Ill. App. 3d 1068, instructive. In that case, the plaintiff claimed that water on the floor of the defendant's business had caused her to slip and fall. *Barker*, 261 Ill. App. 3d at 1070. While she had not seen any water on the floor and could not produce any evidence that she slipped on the floor, she claimed that because her fall had occurred in the defendant's produce section and the produce department regularly sprayed their fruits and vegetables, she must have slipped and fallen over water. *Barker*, 261 Ill. App. 3d at 1072. The court disagreed, holding that this was insufficient to create

a question of fact as to whether the hazardous condition existed and whether it caused the plaintiff to fall. *Barker*, 261 Ill. App. 3d at 1072. As the court explained:

"Even if plaintiff had proved that a spraying system was used by defendant and sometimes caused wetness on the floor, we are not persuaded that a jury could reasonably infer that the floor was wet at the time and place of plaintiff's fall or that the fall in fact resulted from plaintiff's contact with that wetness." *Barker*, 261 Ill. App. 3d at 1072.

¶ 46     In coming to this decision, the court in *Barker* applied the principles set forth in *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813 (1981). See *Barker*, 261 Ill. App. 3d at 1071 (relying on *Kimbrough*). In that case, the plaintiff claimed that she slipped on grease spots on an exit ramp outside of the defendant's store. *Kimbrough*, 92 Ill. App. 3d at 816. While she did claim to have seen spots of the grease on the ramp, she admitted that she had no idea why she fell. *Kimbrough*, 92 Ill. App. 3d at 816. Under these facts, the court found that she could not prove that any hazardous condition on the defendant's premises had proximately caused her injury. *Kimbrough*, 92 Ill. App. 3d at 818.

¶ 47     Applying the principles articulated in *Barker* and *Kimbrough*, it is apparent that the plaintiff's testimony in this case even more egregiously fails to establish either the presence of a dangerous condition on the rink floor, or that any such hazard proximately caused her injury. As already detailed above, not a single witness testified to personal knowledge of any hard candy either in the facility or anywhere on the rink floor on the date of the plaintiff's injury. No one saw the plaintiff fall or roll over candy, and no one saw or complained of any candy in the vicinity of her fall, or anywhere else on the rink floor, either before or after her accident. Under these circumstances, we find that the plaintiff failed to establish the existence of a hazardous condition on the premises, or any factual issue as to such a condition, so as to permit the grant of

summary judgment in favor of the defendants. See *Barker*, 261 Ill. App. 3d at 1072; *Kimbrough*, 92 Ill. App. 3d at 818; see also *Palumbo v. Frank's Nursery & Crafts, Inc.*, 182 Ill. App. 3d 283, 288 (1989) (holding that the plaintiff, a customer, could not recover damages from the defendant on the basis of evidence that she slipped and fell while walking down an aisle between shelves of flowers, and that later that day, she noticed that her coat was wet, in view of testimony of eyewitnesses that they did not see any liquid or debris on the floor either before or after the incident and evidence that the floor was subsequently examined and contained no liquid or debris).

¶ 48      Regardless, even if we were to find that there remains a genuine issue of fact as to whether there was any hard candy on the roller skating rink floor at the time of the plaintiff's fall, for the reasons that follow, we would nonetheless find that summary judgment for the defendants was proper because the plaintiff failed to establish that the defendants had notice of the hazard.

¶ 49      In this respect, at the outset, we disagree with the plaintiff's position that because her claim is for negligence, rather than premises liability, she need not prove that the defendants had notice of the hazardous condition. Our courts have repeatedly held that a plaintiff need not prove notice only when she can show that the hazardous condition was created or placed on the premises by the defendants. *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 715 (1998); *Caburnay v. Norwegian American Hospital*, 2011 IL App (1st) 101740, ¶ 45; see also Illinois Pattern Jury Instructions, Civil, No. 120.00 (2011) ("[c]ase law departs from the 'notice' requirement of Restatement § 343 when the plaintiff shows, through direct or circumstantial evidence, that the dangerous condition arose from the defendant's acts or as part of his business"). The plaintiff can establish that the hazardous condition was created by the defendants

by showing that such a condition "is related to the defendant's business" and by offering "some slight evidence that the defendant or his servants, rather than a customer, placed the [hazardous object/condition] on the floor." *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149, 155 (1995).

¶ 50　　　In the present case, there is no evidence whatsoever that the hard candy is related to the defendants' business or that either the defendants or one of its employees placed that candy on the roller rink floor. The plaintiff provided no testimony that hard candy came from either the defendants' facility or any of the roller rink's employees. In fact, at least two roller rink employees testified that the roller rink did not sell hard candy. In addition, all of the rink employees agreed that food (including candy and chewing gum) were strictly prohibited on the rink floor and that patrons were explicitly admonished of this rule with signs posted inside of the building.

¶ 51　　　The plaintiff herself concedes as much, instead arguing that the defendants were responsible for candy brought into the building by other patrons. In this respect, the plaintiff points out that Torres admitted that for birthday parties and other special occasions, the roller skating rink permitted patrons to bring party favors into the building, which could contain hard candy, and that some such piece of hard candy must have found itself onto the rink floor on the date of the plaintiff's injury. Contrary to the plaintiff's position, however, no evidence whatsoever was presented that any hard candy was brought into the building on the day of the plaintiff's fall or, for that matter, that once inside it was the defendants or their servants, rather than the patrons or the plaintiff herself, that spilled the hard candy onto the rink floor. See *Wind*, 272 Ill. App. 3d at 155 (to avoid the notice requirement, the plaintiff must present "some slight evidence that the defendant or his servants, rather than a customer, placed the [hazardous

object/condition] on the floor"). As such, there can be no dispute of material fact as to whether the hazard was created by the defendants.

¶ 52    Without any such evidence, the defendants can only be held liable if they knew of the hazard's presence, *i.e.*, had either actual or constructive notice of the hard candy. See *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038 (2000) (stating that if "the landowner did not create the condition, the plaintiff must be required to establish that the landowner knew or should have known of the defect"). In this case, there is no evidence of actual notice. Actual notice will be found where there is evidence that the defendant or its employee had been notified of the dangerous condition prior to the plaintiff's slip and fall. See *e.g.*, *Pavlik*, 323 Ill. App. 3d at 1064 (holding that the defendant had actual notice where the plaintiff was told by an employee that spilled the conditioner that the conditioner should have been cleaned up, and where her father was told by another employee that a clerk was supposed to clean it up but did not). Here, there is no testimony in the record suggesting that any employee was aware of candy, or any other foreign object, on the rink floor prior to the plaintiff's fall. What is more, the plaintiff herself testified that the candy must have been "invisible" because she did not see it either before or after her fall.

¶ 53    There is similarly no evidence of constructive notice. "Constructive notice can only be shown where the dangerous condition is shown to exist for a sufficient length of time to impute knowledge of its existence to the defendants." *Ishoo v. General Growth Properties, Inc.*, 2012 IL App (1st) 110919, ¶ 28. The evidence presented in this case did not show that the alleged hard candy was present for any particular length of time. No employee of the defendant testified to being aware of the hard candy prior to the plaintiff's fall. And neither did the plaintiff nor any of her family members. In fact, as already articulated above, no one testified to seeing hard candy

anywhere in the facility on the date of the plaintiff's accident, let alone on the rink floor surface. Instead, the rink employees unequivocally testified that hard candy was strictly prohibited on that floor and that patrons were advised of this prohibition with signs posted inside the building. Under this record, the plaintiff cannot even establish that the alleged hazard (*i.e.*, the hard candy) was on the rink floor, let alone that it remained there for a sufficient amount of time so as to impute knowledge of its existence to the defendants. See *Ishoo*, 2012 IL App (1st) 110919, ¶ 28; see also *Hayes*, 80 Ill. App. 3d at 1030 ("[I]t is incumbent upon the plaintiff to establish that the foreign substance was on the floor long enough to constitute constructive notice to the proprietor.").

¶ 54    Since no genuine issue of material fact exists regarding either the defendants' creation or knowledge of any hazardous condition, we find no error in the trial court's grant of summary judgment in favor of the defendants.

¶ 55    The plaintiff nonetheless asserts that there remains an issue of fact as to constructive notice because the seven videos produced by the defendants establish that the floor guards failed to monitor the rink floor in contravention of both industry standards and their own policies. In this respect, the plaintiff points out that instead of the mandatory three floor guards monitoring the floor for foreign objects at all times, the videos show Barnett in the middle of the skating floor and another floor guard doing tricks, not paying attention to the floor, and then moving outside to help a young child onto the floor. Contrary to the plaintiff's position, however, any such evidence regarding alleged violations of standards of practice does not create an issue of material fact as to notice, where, as here, none of the seven videos show any candy or other foreign object on the rink floor and are instead consistent with the testimony of all of the deposed witnesses, including the plaintiff, that they did not observe any such hazard.

¶ 56    In this vein, we further find unavailing the plaintiff's assertion that had the defendants produced video surveillance for the entire day of the plaintiff's fall, we would have had conclusive evidence of the presence of hard candy on the roller rink surface and her slipping on it. In this respect, the plaintiff argues that in ruling on the defendants' motion for summary judgment, the trial court should have made an adverse inference on the basis of the defendants' alleged failure to produce this video surveillance. For the reasons that follow, we disagree

¶ 57    "An unfavorable evidentiary presumption arises if a party, without reasonable excuse, fails to produce evidence which is under his [or her] control." *Berlinger's, Inc. v. Beef's Finest, Inc.*, 57 Ill. App. 3d 319, 325 (1978). Whether a party's failure to produce evidence under such circumstances may be used as an adverse inference against that party is an evidentiary matter, within the discretion of the trial court. *Simmons v. University of Chicago Hospitals & Clinics*, 162 Ill. 2d 1, 7 (1994) (citing *Schaffner v. Chicago & North Western Transportation Co.*, 129 Ill. 2d 1, 22 (1989)). "An abuse of discretion will be found only where no reasonable person would take the view adopted by the trial court." *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 61 (2005).

¶ 58    In the present case, contrary to the plaintiff's position, there is no evidence anywhere in the record that the defendants refused to supply the plaintiff with any videos in their possession. The record reveals that to the plaintiff's request for "all surveillance video, photographs, [and] other electronic media for the day of the [s]ubject [o]ccurrence," the defendants produced seven videos, depicting the plaintiff roller skating before her fall, her actual fall (but not the footage immediately preceding it), and the rink floor after the fall and up until the plaintiff was transported out of the rink. In her deposition, the rink's general manager testified that she personally compiled all seven videos and that these were all of the videos that she could find

relating to the plaintiff's fall. She explained that, on the date of the incident, the far right camera across from the deejay booth and closest to the plaintiff's fall was broken. In addition, she stated that there may have been angles of the rink floor that could not be captured by any of the rink floor cameras, even when fully functional. The plaintiff made no effort to determine if any additional footage existed, much less to move to compel any further production of such footage. Nor was any such motion ever granted. Instead, the plaintiff waited until discovery closed and the defendants moved for summary judgment to argue that the response to her production request was inadequate and therefore required an adverse inference in her favor. Under such a record, we cannot agree with the plaintiff that the defendants failed to produce more video footage, let alone that they did so without a reasonable excuse. See *Berlinger's*, 57 Ill. App. 3d at 325. As such, we find no abuse of discretion in the trial court's decision not to apply an adverse inference against the defendants. See *Keefe-Shea Joint Venture*, 364 Ill. App. 3d at 61.

¶ 59    In her final ditch effort to avoid the dismissal of her cause of action, the plaintiff argues that the trial court abused its discretion in refusing her request to amend her complaint for a fourth time. In this regard, the plaintiff makes a one sentence argument, noting that her proposed third amended complaint was timely, would not have prejudiced or surprised the defendants because it concerned the same transaction and occurrence as her prior second amended complaint, and further provided "more specificity and detail of [the defendants'] negligence." We disagree.

¶ 60    Regardless of the paucity of this argument, after a review of the proposed amendment, for the reasons already articulated above, namely the plaintiff's inability to establish the existence of any hazard that proximately caused her to fall or any knowledge of the hazard by the defendants, we find no abuse of discretion in the trial court's decision not to permit further amendment of the

complaint. See *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 331 (2008) (" 'Whether to allow an amendment of a complaint is a matter within the sound discretion of the trial court, and, absent an abuse of that discretion, the court's determination will not be overturned on review.' ").

CONCLUSION

For all of the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

**No. 1-18-1337**

| | |
|---|---|
| **Cite as:** | *Haslett v. United Skates of America, Inc.*, 2019 IL App (1st) 181337 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-L-8316; the Hon. John H. Erlich, Judge, presiding. |
| **Attorneys for Appellant:** | John Xydakis, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert Marc Chemers, David M. Bennett, and Scott L. Howie, of Pretzel & Stouffer, Chtrd., of Chicago, for appellees. |