2022 IL App (1st) 210494-U

SECOND DIVISION
March 22, 2022

No. 1-21-0494

**NOTICE:**  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| KAYLA AALBERS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17 L 012537 |
| | ) | |
| LASALLE HOTEL PROPERTIES, a Maryland | ) | |
| Corporation; HEI HOSPITALITY, LLC, a | ) | |
| Connecticut Limited Liability Company; BULLEY | ) | |
| & ANDREWS, LLC, an Illinois Limited Liability | ) | |
| Company; AJAX CONSULTING SERVICES, | ) | |
| LLC, a Massachusetts Limited Liability Company, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MR. DAVID'S FLOORING INTERNATIONAL, | ) | |
| LTD., | ) | The Honorable |
| | ) | Mary Colleen Roberts, |
| Third-Party Defendant-Appellee. | ) | Judge Presiding. |

---

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

No. 1-21-0494

# ORDER

*HELD*:  Trial court's entry of summary judgment in favor of defendants and subsequent denial of plaintiff's motion to reconsider were proper where plaintiff failed to affirmatively and positively demonstrate the element of proximate cause with respect to her negligence cause of action.

¶ 1        Plaintiff-appellant Kayla Aalbers (plaintiff) brought suit against LaSalle Hotel Properties, a Maryland Corporation (LaSalle); HEI Hospitality, LLC, a Connecticut Limited Liability Company (HEI); Bulley & Andrews, LLC, an Illinois Limited Liability Company (Bulley); and Ajax Consulting Services, LLC, a Massachusetts Limited Liability Company (Ajax) (defendants, or as named) following a fall and injuries she sustained at a hotel in Chicago. Bulley filed a third-party complaint against Mr. David's Flooring International, Ltd. (third-party defendant or Mr. David's).  Following discovery, defendants and third-party defendant filed motions for summary judgment, and the trial court granted these motions.  Plaintiff filed a motion to reconsider, which the trial court denied.  Plaintiff appeals from these two orders, contending that the trial court erred in granting summary judgment in defendants' and third-party defendant's favors because it improperly found that she failed to identify a defective condition that caused her fall and because the evidence presented created a question of fact as to the breach of duty of care owed to her; she further contends that the court subsequently erred in denying her motion to reconsider.  She asks that we reverse and vacate said judgments, reinstate this cause in the trial court, and award any further appropriate relief.  For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3         In 2014, Hotel Chicago, located at 333 North Dearborn in Chicago, underwent a

renovation project, which included construction of new flooring in its lobby.[1]  For the record,

LaSalle and HEI were named in the instant suit and final judgment as the hotel's

owner/property management company, respectively.  However, as explained in their joint

brief on appeal, this is a misnomer.  HEI is known as Merritt Hospitality, LLC (Merritt) and

LaSalle is known as LHO Chicago River, LLC (LHO), and it is these entities who own and

operate Hotel Chicago.  Merritt and LHO hired Ajax as the construction manager for the

project and contracted with Bulley to be the general contractor.  Bulley subcontracted with

Mr. David's for the lobby flooring portion of the project.  Also participating in the project

was an architectural firm that drew up the plans and specifications for, among other things,

the lobby flooring.[2]  The flooring project began in November 2014 and was completed in

March 2015.  Thereafter, the project architect issued certificates of substantial completion

and occupancy on the work performed, and Merritt and LHO once again assumed exclusive

control and possession of the lobby.

¶ 4         Nine months later, on December 10, 2015, plaintiff, who had been staying at the hotel,

exited the elevator in the lobby.  As she walked through the lobby, she fell.  A hotel

surveillance camera recorded the incident, and hotel security generated a post-accident

---

[1] The portion of the renovation project concerning construction of new flooring in the hotel's lobby is the only part of the project relevant to the instant cause.
[2] In conjunction with all the named defendants, plaintiff originally brought suit against the architectural firm, as well.  However, that firm is not a party to this appeal.

report.  Plaintiff suffered a lacerated lip, broken wrist, ruptured Achilles' tendon and injured her knee.  She underwent multiple surgical procedures.

¶ 5       Plaintiff filed a complaint, and later an amended complaint, at law against defendants, alleging negligence.  She asserted that defendants carelessly designed and constructed the premises, failed to take proper safety precautions with respect to dangerous conditions, and negligently maintained the area where she fell.  She also asserted that each defendant owed her a duty to operate and maintain the hotel in a safe and reasonable manner so as to prevent injury and that, pursuant to her claims, they breached this duty.

¶ 6       As litigation progressed, and along with the introduction of the surveillance video and accident report, several depositions were taken.  Plaintiff testified that she had been staying at the hotel for business and had walked through the lobby several times.  She noted that the lobby floor was tiled and, immediately in front of the elevators, was carpeted.  Plaintiff stated that on the morning of her fall, the lighting in the lobby was adequate and she did not observe anything obstructing or impeding her view of the floor.  She exited the elevator to go to the front desk and check out of the hotel.  She was pulling her rolling her luggage behind her and had a bag on her shoulder.  As she was walking through the lobby, she was looking up at the hotel's Christmas tree, whereupon she fell.  Plaintiff described her fall specifically as a "trip" and not a slip, stating that "there was a piece of something" she "tripped on, like a ledge in the area where the carpet and tile met * * * a lip."  Plaintiff admitted that she never saw a lip or ledge in the flooring before she fell because she was not looking down while she walked, and she never saw a ledge in the flooring after she fell because she went sliding when she fell

4

and never looked at the area that day or anytime thereafter to see what potentially could have caused her to fall. She insisted, however, that there had been "just like a little ledge that just caught [her] toe" somewhere on the floor. In describing the location of her fall, plaintiff first stated that she believed she fell where the carpet and tile met in the lobby, but then admitted that, as she had not been looking down at the floor, she was unsure of the location. She explained she could only say that she thought she fell where the carpet and tile met because she had been walking on the carpet; however, she had fallen forward from some spot on the carpet and eventually landed on the tile after sliding. She could not say how long the carpet was nor could she say that she was at the end of the carpeted area where the carpet met the tile when she fell. After admitting she did not see a ledge in the flooring at any point in time, the following exchange took place:

"[Counsel:] Q. So then how do you know you fell on a ledge then?

[Plaintiff] A. Well, I felt it. I felt it with my toe. I felt it as I went.

Q. I see. So other than feeling the ledge, you have never seen the ledge?

A. No.

Q. Fair statement?

A. Fair statement.

* * *

Q. * * * How do you know it was a ledge as opposed to some other encumbrance on the floor?

A. There was something that caught my foot as I fell.

Q. Okay.

A. Yeah, something that caught my foot.

Q. And I want to make sure I have you correctly. I don't want to go back and forth. But you felt something catch your foot; is that correct?

A. Correct.

Q. You did not see what caught your foot before you fell, correct?

A. Correct.

Q. You did not see what caught your foot after you fell, correct?

A. Correct.

Q. So you couldn't tell me the size of whatever you tripped on, correct?

A. Correct.

Q. You couldn't describe it in any way, shape or form the thing that you believe caused you to trip, true?

A True.

* * *

Q. Couldn't say if it was metallic, wood or otherwise, correct?

A. Correct.

Q. You couldn't even say what it physically is other than to say that it may have been a ledge, correct?

A. Correct."

After her fall, plaintiff was attended to by a hotel security guard as well as two friends with whom she was travelling. Plaintiff testified that no one saw her fall and no one ever told her what caused her fall. Again, she never inspected the flooring around where she tripped at any time before or after her fall.

¶ 7    Mark Dienhart, the hotel's general manager, testified that, per his job requirements and in addition to weekly walk-throughs of the hotel with department heads, he personally walks the premises, including the lobby, twice a day to look for any defects, obstructions, or problems. He confirmed he was present that morning and that he had done his first walk of the day earlier, before plaintiff's fall, and did not note any problems in the flooring. He also confirmed that there was no construction taking place in the lobby, as the renovation projected had been completed some nine months earlier. Dienhart was notified of plaintiff's fall immediately after it happened and he, along with the hotel's regional director of operations Allison Beckner, inspected the area soon thereafter. Dienhart stated that he first reviewed security footage to determine where plaintiff had fallen. He then went to the lobby with Beckner and he got down on the floor in that area, which comprised the carpet in front of the elevator bank and the tile next to it, to see if there was a reason for plaintiff's fall. Among other concerns, for example, he searched for rips in the carpet and cracks in the tile, and he touched the flooring to see if there was any sort of residue in or around the area. Dienhart explained that if he had identified any concern, he would have closed the area. Upon his inspection, however, he found no potential hazard and confirmed with Beckner that she did not find any, either. Dienhart further testified that, even though he did not find any

7

issues with the area, he decided, "from a follow-up standpoint," to notify the contracted partners who had worked on the flooring during the hotel renovation project "so they could also investigate and validate that there was nothing wrong" with it. Dienhart averred that a contractor was called to conduct a thorough investigation of the area to make sure it was safe and not in need of repair. Dienhart testified that no changes were made to any of the lobby flooring, including the carpet and tile, as a result of plaintiff's fall. Finally, Dienhart noted for the record that in the nine months between the completion of the flooring renovation project and plaintiff's fall, thousands of people had walked through that same particular lobby area and no one had slipped, tripped, or fallen, nor had anyone made any complaint about that area, the carpet, or the tile.

¶ 8        Several witnesses testified with respect to the flooring renovation project itself. Briefly, Gregory Marquez, Bulley's safety and risk management director, testified that he was responsible for the oversight and implementation of safety for the project. Bulley did not design the project nor select the flooring or carpeting; the architectural firm had done so. Likewise, Bulley did not perform the installation; it subcontracted with Mr. David's to do so. Marquez stated that, as far as he knew, Bulley and Mr. David's complied with all the specifications and requirements of the project, as upon the flooring's completion, the architectural firm issued certificates of substantial completion and occupancy and did not issue a punch list with respect to the carpet, tile, or any other portion of the flooring in the lobby. During his deposition, Marquez viewed photographs of the area and testified that they clearly show the carpet and tile are at the same level in the lobby and that there is no height

differential between them. He further confirmed that this is how the flooring was when he walked through the project upon its completion in early 2015. He had walked in and around the lobby and did not see any problems or defects in the flooring or carpet. He also stated that he never received any reports of any tripping incidents in the lobby in the nine months between the completion of the project and the instant incident. Karel Steiner, Ajax's owner, testified that Ajax's role in the project was to be Merritt and LHO's representative and to report the project's progress and maintain the schedule and budget. Steiner stated that Ajax was not responsible for project safety or the final renovations, and confirmed that upon the flooring project's completion in early 2015, all parties involved were paid for their work. Finally, John Novotny, Mr. David's project manager, testified that after finishing its portion of the lobby flooring renovation in early 2015, Mr. David's received payment and was never called back for any problems or defects.

¶ 9    Upon this evidence, defendants and third-party defendant filed separate motions for summary judgment. Although they argued slightly differently with respect to any duty of care owed to plaintiff due to their different roles in the flooring project, each presented the same principal argument with respect to proximate causation, namely, that plaintiff had been unable to identify any defect in the flooring that was to blame for her fall.

¶ 10    The trial court granted the motions. After discussing the elements of a negligence cause of action and the burdens of the parties, particularly in relation to slip-and-fall cases, the court turned to *Kimbrough v. Jewel Companies, Inc.*, 202 Ill. App. 3d 968 (1981), finding it to be directly on point. Applying *Kimbrough*, the trial court found that, although plaintiff's

testimony established she fell on the hotel's floor, she failed to show either a defective condition existed in the flooring that caused her to fall or, if there was such a condition, all or any defendant here[3] caused it. With respect to the former, the court noted that plaintiff could not describe the appearance, shape, size, or material composition of the alleged condition that caused her fall; she only stated it was "something" like a lip or ledge that she felt but never saw. The court also noted that the surveillance video likewise failed to identify what caused her to fall. From this, the court concluded that plaintiff's claim was conjecture which could not, and did not, prove a defect. Next, with respect to its finding of lack of causation, the court noted that, even assuming there was a defective condition in the flooring, plaintiff failed to show any defendant caused it. The court found that the evidence showed Ajax had no role in designing, building, or inspecting the floor; Mr. David's followed the architectural firm's plans and specifications; Bulley received certificates of substantial completion of the flooring in March 2015 for the work; and plaintiff never argued that Merritt or LHO caused a defect in the floor after they assumed control of the lobby and flooring once the project was completed nine months earlier. After also briefly discussing the element of duty and finding none on the part of defendants for various reasons, the court ultimately concluded that plaintiff "has not shown some condition caused her to fall and she has not shown that defendants caused that condition (if one existed[)]." Accordingly, it entered summary judgment in favor of each defendant on each of their motions.

---

[3] As we have already specified each defendant's role in this cause and since, for purposes of the remainder of our decision, all defendants litigated this matter in essentially the same manner, we refer to them (as did the trial court) collectively as "defendants" without the need to distinguish between "defendants" and "third-party defendant" Mr. David's.

¶ 11    Plaintiff filed a motion to reconsider. She asserted that the trial court misapplied *Kimbrough* because unlike the plaintiff in that case, she was able to identify the exact condition that caused her fall, *i.e.*, "a lip or ledge protruding from the floor," as well as its precise location, *i.e.*, in the carpet and tile area near the elevators. Additionally, she argued that the court misapplied existing law by failing to recognize defendants' duty of care and, therefore, each of them were the "cause" of her injuries. She sought to introduce photographs of the flooring that were taken post-incident to which she had access but never reference during summary judgment, and she cited for the first time Restatement (Second) of Torts § 385 along with two cases in support of a new argument that duty continues with contractors indefinitely even after the property owner has accepted completed work.

¶ 12    In reviewing her motion, the trial court again held in favor of defendants. The court noted that plaintiff's initial argument in her motion regarding the misapplication of *Kimbrough* "is the same argument she asserted in her response to [d]efendants' Motion for Summary Judgment," with the only difference being citations to case law she had not previously cited. As this did not consist of newly discovered evidence, changes in the law, or trial court error, the court declared that this was a not a basis for reconsideration. With respect to the remainder of her motion, the court noted that it presented "many new arguments" that were "based on existing evidence in the record" -- "arguments she did not present" earlier in her response the defendants' motions for summary judgment even though she could have. As these arguments were now untimely, the court declared it could not

consider them and they were subject to waiver. Accordingly, the court denied plaintiff's motion to reconsider.

¶ 13                                    ANALYSIS

¶ 14        Plaintiff appeals from the trial court's grant of summary judgment in favor of defendants, as well as its denial of her motion to reconsider. Primarily, she contends that the court erred in finding she failed to identify a defective condition causing her fall by misapplying *Kimbrough* and by failing to consider evidence corroborating her identification of the defective condition. She further contends that the evidence presented creates a question of fact as to defendants' breach of duty of care, as each of them in their own way "were a cause of" her fall and "caused her injuries." Additionally, in her reply brief on appeal, she insists that her motion to reconsider was based solely on her claim of the misapplication of law and not new argument and, thus, contrary to the court's ruling, waiver did not apply. We disagree with plaintiff's contentions.

¶ 15        We begin with the standard of review with respect to summary judgment which, as the parties acknowledge and agree, is well established. Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001); accord *Purtill v. Hess*, 111 Ill. 2d 229, 240-44 (1986). While a plaintiff need not prove her entire case during this stage of litigation, she is nevertheless required, as the nonmoving party, to present some factual basis and evidentiary facts to support the elements

of her cause of action. See *Bellerive v. Hilton Hotels Corp.*, 245 Ill. App. 3d 933, 936 (1993). Plainly, " '[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment' " (*Cole v. Paper Street Group, LLC*, 2018 IL App (1st) 180474, ¶ 41, quoting *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999)), and a plaintiff cannot rely solely on the allegations in her complaint in order to raise a genuine issue of material fact. See *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 19; accord *Rucker v. Rucker*, 2014 IL App (1st) 132834, ¶ 49; see also *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010) (conclusions or statements based only on information or belief are insufficient to withstand pleading challenge); *Winnetka Bank v. Mandas*, 202 Ill. App. 3d 373, 387-88 (1990) (the plaintiff has a duty to present a factual basis which would arguably entitle her to judgment in her favor based on the law). Ultimately, while summary judgment has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " *Morris*, 197 Ill. 2d at 35, quoting *Purtill*, 111 Ill. 2d at 240. Appellate review of a trial court's grant of summary judgment is *de novo* (see *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992)), and reversal will occur only if we find that a genuine issue of material fact exists (see *Addison v. Whittenberg*, 124 Ill. 2d 287, 294 (1988)).

¶ 16     To properly state a cause of action for negligence, a plaintiff must show that the defendant owed her a duty, that the defendant breached that duty, and that this breach was the proximate cause of the plaintiff's resulting injuries. See *Bermudez v. Martinez Trucking*, 343

Ill. App. 3d 25, 29 (2003). Proximate cause is an essential element of a negligence claim. See *Bermudez*, 343 Ill. App. 3d at 29. The plaintiff has the burden to "affirmatively and positively show" that the defendant's alleged negligence caused the injuries for which she seeks recovery. *Bermudez*, 343 Ill. App. 3d at 29, citing *McInturff v. Chicago Title & Trust Co.*, 102 Ill. App. 2d 39, 48 (1968) (the plaintiff must show "a relationship between the act or omission and the injury or damage suffered that the act or omission may be said to be the proximate cause of such injury or damage"). "Thus, the plaintiff must establish with 'reasonable certainty' that the defendant's acts or omissions caused the injury." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 34, quoting *Mann v. Producer's Chemical Co.*, 356 Ill. App. 3d 967, 972 (2005). While proximate cause is generally a question of fact, it becomes a question of law when the facts alleged indicate that a party would never be entitled to recover. See *Bermudez*, 343 Ill. App. 3d at 29-30, citing *Barham v. Knickrehm*, 277 Ill. App. 3d 1034, 1039 (1996). Accordingly, if the plaintiff fails to establish the element of proximate cause, she has not sustained her burden and fails to establish a genuine issue of material fact, rendering summary judgment in favor of the defendant appropriate as a matter of law. See *Berke*, 2016 IL App (1st) 150397, ¶ 32; accord *Hussung v. Patel*, 369 Ill. App. 3d 924, 931 (2007).

¶ 17　　The plaintiff may establish proximate cause via the presentation of circumstantial, rather than direct, evidence. See *Berke*, 2016 IL App (1st) 150397, ¶ 35, citing *Mann*, 356 Ill. App. 3d at 974; accord *Bermudez*, 343 Ill. App. 3d at 30. Such evidence may comprise facts and circumstances that, in the light of ordinary experience, reasonably suggest that the

defendant's negligence operated to produce the injury. See *Berke*, 2016 IL App (1st) 150397, ¶ 35. However, while it is true that it is not necessary that only one conclusion flow from the evidence, "a fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn." *Berke*, 2016 IL App (1st) 150397, ¶ 35, citing *Weigman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 796 (1999). In other words, the conclusion must be one that can reasonably be drawn, and the mere possibility of a causal connection is simply insufficient to raise the requisite inference of fact. See *Bermudez*, 343 Ill. App. 3d at 30, citing *Nowak v. Coghill*, 296 Ill. App. 3d 886, 896 (1998). Therefore, where the nonexistence of a fact to be inferred appears to be just as probable as its existence, any conclusion derived therefrom is solely a matter of speculation, conjecture, or guess which, as we have already discussed, cannot support the element of proximate cause nor, in turn, a legally cognizable claim of negligence. See *Berke*, 2016 IL App (1st) 150397, ¶ 35, citing *Mann*, 356 Ill. App. 3d at 974; see also *Kellman v. Twin Orchard County Club*, 202 Ill. App. 3d 968, 974 (1990) ("[t]he occurrence of an accident does not support an inference of negligence, and, absent positive and affirmative proof of causation, [a] plaintiff cannot sustain the burden of establishing the existence of a genuine issue of material fact").

¶ 18    Because we find that plaintiff here failed to uphold her burden to affirmatively and positively show the element of proximate cause, we hold that there were no genuine issues of material fact with respect to her negligence cause of action and, thus, that the trial court's grant of summary judgment was proper.

¶ 19    The instant cause turns on the applicability of *Kimbrough v. Jewel Companies, Inc.*, 92 Ill. App. 3d 813 (1981). The crux of plaintiff's argument on appeal is that, not only is *Kimbrough* distinguishable from her situation, but also that the trial court misread that case and misapplied the law announced therein to find that she failed to prove the element of proximate cause. Defendants, meanwhile, all agree that *Kimbrough* governs this matter and that the trial court correctly applied its holding. Accordingly, we focus now on *Kimbrough*, the seminal decision on proximate causation in slip-and-fall cases.

¶ 20    In *Kimbrough*, the plaintiff sued the defendant after she slipped on a ramp while leaving the defendant's store. No one witnessed her fall. In her deposition, the plaintiff testified that on the day of the accident, she took one step onto the ramp to leave when her feet went out from under her. At the time, she was holding her young child's hand in one hand and a grocery bag and her wallet in the other. Upon further questioning, she averred that she could not remember what she fell on or what made her fall, she never went back to see what she might have fallen on, and she never looked at the ramp before she stepped on it. She noted that, after she fell, she saw what appeared to be grease spots on the ramp and she had some grease on her pants. However, she could not be exact about where she fell on the ramp, and she admitted she did not know if her foot actually touched the grease spots before she fell; ultimately, she stated she "had no idea why she fell." *Kimbrough*, 92 Ill. App. 3d at 816-17. Based on this, the defendant filed a motion for summary judgment, which was granted. See *Kimbrough*, 92 Ill. App. 3d at 818-19.

¶ 21    On appeal, the *Kimbrough* court affirmed.  In so doing, it reinforced several legal principles regarding the sufficiency of negligence pleadings in slip-and-fall cases that remain controlling to this day.  Chief among them is the plaintiff's burden to establish the element of proximate cause, and to do so by pointing to an identifiable defect that caused the fall.  As the *Kimbrough* court plainly stated, "[l]iability cannot be predicated upon surmise or conjecture as to the cause of the injury; proximate cause can only be established when there is reasonable certainty that the defendant's act caused the injury * * * [and n]o liability can exist unless the defendant's alleged negligence is the legal cause of the plaintiff's injury." *Kimbrough*, 92 Ill. App. 3d at 817.  With this, it reinforced the principle that merely showing a slip and fall on the defendant's premises is not enough to satisfy pleading requirements. See *Kimbrough*, 92 Ill. App. 3d at 818.  Instead, the *Kimbrough* court declared, in no uncertain terms, that "[t]he plaintiff must go further and prove that some condition caused the fall and that this condition was caused by the defendant." *Kimbrough*, 92 Ill. App. 3d at 818.

¶ 22    Turning, then, to the evidence before it, the *Kimbrough* court noted that the plaintiff repeatedly stated she did not know how she fell.  See *Kimbrough*, 92 Ill. App. 3d at 817.  She could not show that there was some object lying on the ramp or that there was any defect in the ramp, nor could she show that such an object or defect caused her fall.  See *Kimbrough*, 92 Ill. App. 3d at 817.  While she afterwards saw something on the ramp that looked like grease, she admitted she did not know if it was grease, if it was slippery and, most significantly, if she had even stepped on it.  See *Kimbrough*, 92 Ill. App. 3d at 817.  As it was not enough to show simply that she fell, and as she could not go further to prove via any

17

evidence that some condition caused her to fall and that this condition was caused by the defendant, she could not prove her case. See *Kimbrough*, 92 Ill. App. 3d at 818. Accordingly, the court concluded that because the plaintiff could not meet the pleading requirements with respect to proximate cause, her claim could not stand. See *Kimbrough*, 92 Ill. App. 3d at 818-19 (a plaintiff's failure to prove one element of negligence, *i.e.*, causal connection between condition and fall, entitles the defendant to summary judgment on entire negligence claim).

¶ 23    Not only was *Kimbrough* well-reasoned and correctly decided, but it has also consistently remained on sound and solid legal footing as the mainstay of slip-and-fall summary judgment cases. And, its applicability to the instant cause is inherently undeniable.

¶ 24    Just as the plaintiff in *Kimbrough*, plaintiff here cannot point to any defective condition that caused her to fall in the lobby and/or that this condition was caused by any of the defendants. In her deposition testimony, plaintiff stated she tripped on a lip or ledge in the flooring, which she felt with her foot. However, she could not describe either the location of her fall or what caused her to fall. As to location, she first testified that she believed she fell where the carpet met the tile in the lobby near the elevators and, thus, that the ledge she felt must have been where the two different flooring types butted next to each other. Yet, she later admitted that she was not sure that was true. She admitted that, at the start of her fall, she was looking up at the hotel Christmas tree and was not looking down and the floor. She further explained that she fell forward while walking on the carpet and went sliding, eventually ending up somewhere on the tile. She could not say that she was at the end of the

18

carpet where it met the tile when she fell, how long the carpeted area was, or how far she slid forward. Therefore, she did not know whether she fell on the carpet, on the tile, or at the spot where the carpet met the tile.

¶ 25    Even more significant here, though she insisted that she tripped on a ledge in the floor, plaintiff admitted in her deposition that she never saw a ledge in the floor before, during, or after her fall. Again, she stated that she generally does not look at the floor when she walks and certainly was not doing so before her accident here, as she was looking up at the Christmas tree. She further stated was not looking at the floor during her fall. And, she affirmed that she never inspected the floor after her fall that day, or at any other time, to find the ledge she claimed caused her fall. She never saw a ledge, never touched a ledge (save with her toe as she alleged), and could not describe the ledge in any way. Then, when questioned further, she stated she felt "something" catch her foot, but she could not say what that something was; she thought it was a ledge, but she could not say what it physically was and she could not answer why she thought it was a ledge as opposed to, for example, perhaps some other encumbrance on the floor. As she admitted during her deposition, she could not describe "in any way, shape or form the thing" she believed caused her to trip. She did not know its size, shape, or location, and she could not say if it was made of wood, metal, or something else. Additionally, no one witnessed her fall; no one saw her fall and no one told her what caused her fall.

¶ 26    These facts are very similar to those experienced by the plaintiff in *Kimbrough*. The plaintiff's argument there boiled down to her assertion that, since there were grease spots on

19

the ramp, she must have fallen because of them. Yet, this was nothing more than mere conjecture, especially since the plaintiff admitted not only that she did not know how or why she fell, but also that she was not sure she ever even touched the grease spots. Here, plaintiff's testimony, and lack of any specification therein, demonstrates that the alleged cause of her fall is even more nebulous. Unable to describe the location of her fall or any detail about the alleged ledge she claims caused it, her argument essentially boils down to her assertion that, because she felt her foot catch on something, therefore, there must have been a ledge in the floor that made her trip. However, equally plausible (and never dismissed by plaintiff in her testimony) is that the "ledge" she felt was her other foot, or her suitcase she was rolling behind her as she was walking, or even a strap on the bag she had on her shoulder, among a number of other scenarios. Whatever this "ledge" was, it remains unidentified in any way to this day. Plaintiff assumes that, by merely stating its existence, it must have been defect in the flooring. However, in light of her testimony that she never saw anything wrong with the carpet or tile in the area where she fell—coupled with manager Dienhart's testimony that he got down on the floor immediately after plaintiff's fall to inspect the area, touched the carpet and tile with his hands, and found no rips, cracks, residue, or other defect; there were no falls or complaints about the area in the nine months between the completion of the flooring project and plaintiff's fall; and the flooring project passed inspection, was issued the appropriate certifications, and was never altered after plaintiff's fall—all show that plaintiff's assumption is nothing more than plain conjecture. Plaintiff claims there was a hazard—a ledge—but she never proved it because she never went further

20

to show that some actual condition caused her fall, as required by *Kimbrough* to survive summary judgment. See *Kimbrough*, 92 Ill. App. 3d at 818. Accordingly, and contrary to plaintiff's insistence, we find no error in the trial court's application of *Kimbrough* to the instant case.

¶ 27    In her brief on appeal, plaintiff strongly maintains that the trial court not only misapplied *Kimbrough*, but also that *Kimbrough* is completely inapplicable here. She asserts it "only applies to cases where the record completely lacks an identifiable defect on the property which allegedly caused the fall and resulting injuries." Her reasoning for this is that the plaintiff in *Kimbrough* stated she had "no idea" why she fell, whereas in this case, plaintiff "identified" "a lip or ledge protruding from the floor" and, accordingly, this identification of a "defect" constituted "sufficient evidence of a condition that caused her to fall." In support of her assertion, she provides a bullet-point list of some 10 slip-and-fall cases she classifies as *Kimbrough*-inapplicable because the plaintiffs therein, just as she did, identified what caused them to fall, thereby overcoming summary judgment. However, neither her interpretation of *Kimbrough* nor her citations provide support for her claim.

¶ 28    First, not only does plaintiff mischaracterize the holding of *Kimbrough*, but her attempt to manipulate its facts in an effort to distinguish her case is, based on the evidence here, wholly disingenuous. In fact, and contradictorily, it actually reveals that her cause is even more speculative than that presented in *Kimbrough*. As an initial matter, plaintiff provides no legal support for her assertion that the principles in *Kimbrough* only apply when there is a complete lack of an identifiable defect. Incidentally, while the plaintiff there did admit she

21

had no idea why she fell, she was nonetheless able to identify and prove the existence of grease stains on the ramp where she fell and even on the pants she wore that day. She, indeed, identified a defect. The problem was, however, that she could not show that this defect—the grease stains—actually caused her fall, as she testified that she was unsure she ever even stepped on them. Here, plaintiff's case is no less speculative simply because she testified that she believed she tripped over a ledge in the flooring she claimed must have existed since she felt it with her foot. Again, she was completely unable to describe the ledge (including its location or constitution) as anything more than "something" that caused her to fall. She never saw this ledge before, during or after her fall, and could not prove it existed. There were no witnesses to her fall, and Dienhart testified that he saw no defect (including lips or ledges, unevenness, rips in the carpet, cracks in the tile, or residue of any kind) in or on the floor upon his immediate inspection after her fall. Plaintiff may have alleged a hazard, but she provided no evidence to identify it, let alone demonstrated that it caused her fall or, in turn, that defendants caused it. Ironically, plaintiff's attempt to distinguish *Kimbrough* by saying it only applies to cases where the record completely lacks an identifiable defect reveals that her case fits exactly into that category. Regardless, it is clear to us that plaintiff's case suffers from the same shortcomings as that of the plaintiff in *Kimbrough*.

¶ 29    Furthermore, the laundry list of cases plaintiff cites in support of her insistence that *Kimbrough* is inapplicable are markedly distinguishable and do not advance her claim. While she is correct in noting that the courts therein overturned summary judgment, the facts of those cases are inconsistent with those in her own case. For example, and briefly,

22

summary judgment was reversed in *Bellerive*, 245 Ill. App. 3d 933 (1993), because the plaintiff identified worn, unlevel and uneven marble steps on the stairway of a hotel as the cause of her fall. In *Canzoneri v. Village of Franklin Park*, 161 Ill. App. 3d 33 (1987), and *Lapidus v. Union Oil Co.*, 181 Ill. App. 3d 116 (1989), the plaintiffs identified that the sidewalks they were walking on when they fell were uneven and/or broken, and this was the cause of their falls. Plaintiff then cites a series of cases where summary judgments were reversed because the plaintiffs identified as the cause of their falls foreign substances on the ground where they fell. These include *Johnson v. Sears, Roebuck & Co.*, 186 Ill. App. 3d 725 (1989) (the plaintiff and three witnesses identified a broken bag of garden soil spilling into snow and slush that created a layer of dirty water and mud at site of fall); *Heider v. DJG Pizza, Inc.*, 2019 IL App (1st) 181173 (the plaintiff identified a patch of wet concrete at the location of the fall); and *Ishoo v. General Growth Props., Inc.*, 2012 IL App (1st) 110919 (the plaintiff testified she slipped on a puddle of liquid cleaning fluid left on the floor); *Wiegman*, 308 Ill. App. 3d 789 (1999) (three occurrence witnesses testified that the plaintiff slipped on water that collected at the bottom of a stairway); *Grewe v. West Washington County Unit District #10*, 303 Ill. App. 3d 299 (1999) (occurrence witness who aided the plaintiff after her fall in a lobby testified to a slick, gray substance on his clothes); *Van Holt v National R.R. Passenger Corp.*, 283 Ill. App. 3d 62 (1996) (the plaintiff identified, and accident report confirmed, oily and slimy spot on floor where she fell); *Housh v. Swanson*, 203 Ill. App. 3d 377 (1990) (after fall on deck, antenna wire found on ground was partially wrapped around the plaintiff's legs which she identified as cause of her fall).

¶ 30    What makes all of these cases distinguishable from plaintiff's is that the plaintiffs therein all identified specific conditions responsible for their falls. In other words, based on their testimony, they were able to point, with reasonable certainty, to specific defective conditions in the premises at issue that caused their falls, warranting the reversal of summary judgment. Here, there was no such testimony to show any defective condition in the flooring of the lobby where the fall occurred. Other than saying it was "something" which she admitted she never saw and could not describe, plaintiff never identified in her testimony a substance, item, or defect that constituted a dangerous condition. Without more, this hardly puts her cause on par with the cases she cites, all of which establish causation for the injuries sustained.

¶ 31    We would be remiss if we did not highlight *Haslett v. United Skates of America, Inc.*, 2019 IL App (1st) 181337, a case almost directly on point with plaintiff's which recently appeared before this very panel of this Court.[4] In *Haslett*, the plaintiff fell and injured her back while roller skating at the defendants' facility. She brought a negligence suit alleging, in part, that the defendants failed in their duty to maintain and secure the rink. With respect to proximate causation, she insisted that the cause of her fall was a piece of hard candy over which she rolled while skating on the rink floor. During her deposition, the plaintiff described that she felt her skate roll over something before she fell. She also noted that after her fall, her mother retrieved the skates she was wearing (which were her own) and, upon her inspection some three days after returning home from the hospital, she noticed " 'red

---

[4] Our decision in *Haslett* was issued by the members of this panel when they sat in the Third Division of this Court. Since then, the members of the panel have moved and all currently sit again together in the Second Division.

crumbled up' " pieces of candy on the front wheels, which she believed came from a Jolly Rancher candy that must have been the cause her fall. *Haslett*, 2019 IL App (1st) 181337, ¶11. However, the plaintiff acknowledged she never saw any candy on the rink floor before her fall (she had made at least one entire trip around the rink), during her fall (when she was lying on the rink floor), or after her fall (while she awaited assistance). See *Haslett*, 2019 IL App (1st) 181337, ¶10. She could only say that she " 'felt rolling over something' " and admitted she never saw any object over which she could have tripped; she could not state how large the candy was, how long it had been on the rink floor, where it came from, or how it got there. *Haslett*, 2019 IL App (1st) 181337, ¶10. She further noted that no one witnessed her fall and no one told her that she tripped over a piece of candy. *Haslett*, 2019 IL App (1st) 181337, ¶10. Additionally, the rink assistant manager testified that before the plaintiff's fall, the rink had been swept and checked for debris, as was customary before each skating session. See *Haslett*, 2019 IL App (1st) 181337, ¶18. This was confirmed by the testimony of a floor guard and the rink's general manager. See *Haslett*, 2019 IL App (1st) 181337, ¶¶ 22, 29. Immediately after her fall, the assistant manager went out onto the rink to inspect the area and found it to be clean, dry, and devoid of any foreign objects, debris, or defects. See *Haslett*, 2019 IL App (1st) 181337, ¶18. He further testified that no one reported any candy on the floor at any time before or after the plaintiff's fall, and no foreign objects were removed from the skating floor that day. See *Haslett*, 2019 IL App (1st) 181337, ¶19. Upon this evidence, the trial court granted summary judgment in favor of the

defendants, finding that there simply was no evidence to indicate any defect in or on the floor. See *Haslett*, 2019 IL App (1st) 181337, ¶34.

¶ 32    On appeal, we affirmed, concluding that the plaintiff could not meet her burden with respect to proximate causation. Briefly, we noted that "at a bare minimum, a plaintiff who claims to have been injured by a hazard on the defendant's premises must prove the existence of the hazard itself." *Haslett*, 2019 IL App (1st) 181337, ¶43. The plaintiff in *Haslett*, however, "failed to present any evidence whatsoever of the existence or presence of any such hazard on the rink floor." *Haslett*, 2019 IL App (1st) 181337, ¶43. No one, not even she, testified to seeing hard candy or anything else on the floor before, during, or after her fall and the only circumstantial evidence presented—the candy crumbs on her skates—was not discovered until at least three days later and, thus, there was no way to demonstrate that this had anything to do with her fall. See *Haslett*, 2019 IL App (1st) 181337, ¶¶ 44, 47. Citing *Kimbrough*, we held that, without more, summary judgment in favor of the defendants was proper, since the plaintiff could not establish the existence of a hazardous condition on the floor. See *Haslett*, 2019 IL App (1st) 181337, ¶¶ 46-47, citing also *Barker v. Eagle Food Centers, Inc.*, 261 Ill App. 3d 1068, 1072 (1994) (where the plaintiff alleged she slipped on water on the defendant's floor but admitted she did not see any and could not present any evidence to show that was the cause of her fall other than to state that the defendant's produce department regularly sprayed fruits and vegetables with water, summary judgment in the defendant's favor was proper), and *Palumbo v. Frank's Nursery & Crafts, Inc.*, 182 Ill. App. 3d 283 (1989) (the plaintiff could not recover for fall she attributed to hazard on the

26

defendant's aisle floor where, although she noted later that day her coat was wet, she could not present any testimony or evidence as to water or such, and evidence otherwise showed that the floor had been examined after her fall and contained no liquid or debris).

¶ 33    Applying *Haslett* to the instant cause, it quickly becomes clear that the same outcome is merited. In fact, plaintiff's testimony here fails even more than that of the plaintiff in *Haslett* to establish either the presence of a dangerous condition on the lobby floor, or that any such hazard or defect therein proximately caused her fall. While the *Haslett* plaintiff could not identify or describe any candy (or other object) on the rink floor to support her claim that this must have caused her fall, she did testify to red crumbled up pieces of hard candy on the front wheels of her skates, albeit some three days after her fall. We found, however, that, in light of the lack of eyewitness testimony or personal knowledge about candy anywhere in the facility or complaints of candy in the vicinity of the fall or its existence anywhere else on the rink floor at any time before, during, or after her fall, this was not enough to establish the required element of proximate cause to support a negligence claim. In the instant cause, plaintiff has not provided this Court with any "red candy crumbles" of her own in an attempt to somehow support her claim. Instead, all she has provided is speculative testimony that she fell on something she classified as a ledge but admittedly did not see and could not describe. This, in combination with a lack of eyewitness testimony or personal knowledge about any supposed ledge, any complaints about a ledge in the lobby flooring in the nine months between the construction project and her fall, or the existence of a ledge anywhere in the flooring, cannot support a negligence claim here.

¶ 34    In her brief on appeal, plaintiff insists she presented "numerous sources of" evidence, both direct and circumstantial, that more than sufficiently demonstrate proximate cause and that the trial court improperly disregarded them. We disagree, for various reasons. First, plaintiff cites the hotel surveillance video footage of her fall, which she states clearly "illustrates a carpeted area of flooring right outside of the elevator that transitions to floor tile and as [she] walked over it, her foot became caught" and she fell. However, the trial court noted for the record that the video did not comprise circumstantial evidence because, while it showed the general location of plaintiff's fall and her actually falling, it never showed what caused her to fall; it did not show a ledge or lip in the floor, as she alleged. We agree. The video shows plaintiff fall and that the fall occurred near the elevator bank. However, that is all it shows. It in no way shows her foot catching on anything or, more importantly, the "something" she testified allegedly caused her to fall. The mere fact that the video shows she fell near an area where carpet and tile met, which has never been disputed, does not prove that either the carpet, the tile, their conjunction, or a lip or ledge—which is not at all visible in the video— or anything else caused her to fall.

¶ 35    Plaintiff next refers in her brief to photographs that were taken after the incident showing a metal strip or casing, also known as a Schluter Strip, capping the end of the carpet before it transitions to the tile. She insists these photos prove proximate cause, as "[t]his is exactly what [she] described as the condition that caused her fall." Again, this is incorrect. The presence of the Schluter Strip in the lobby flooring was never disputed. However, plaintiff never mentioned it in her complaint, in her deposition, or at any other point during the

proceedings. She references it for the first time in her brief on appeal. Moreover, her own testimony belies her new claim of "proof." She directly admitted that she could not describe the "something" she fell on, and could not say what it was made of, including, and specifically, if it was "metallic, wood or otherwise." She never testified that the Schluter Strip was the lip or ledge she claimed caused her fall, that it looked defective in any way, or that anyone ever complained of it. Her claim now that the Schluter Strip was, indeed, the "condition that caused her fall" is wholly disingenuous.

¶ 36    The final pieces of evidence plaintiff cites in support of her assertion that she presented sufficient proof of proximate cause include a post-accident incident report prepared by a hotel representative which she insists "verifies the accuracy" of her testimony, "confirmed repairs" made to the hotel floor after the incident by third-party defendant Mr. David's, and certain testimony from Mr. David's project manager Novotny which she characterizes as indicating that he found the flooring renovation project to have been "difficult." However, none of these supports her claim. As presented in the record, the post-accident report states only that she tripped and fell near where the carpet and tile met outside the elevator bank; again, it does not detail, or even alleged, any defect nor any evidence of a defect in that area. Plaintiff's assertion that there were "confirmed repairs" to the floor by Mr. David's after her fall is similarly unavailing. She points to no such evidence of this in the record, and no one from Mr. David's so testified. The only person who did testify about the floor after the fall was hotel manager Dienhart, who inspected it immediately and found no defects or residue. Although he notified contracted partners who had worked on the project nine months earlier,

he did so only "from a follow-up standpoint" and he clearly confirmed that there were never any complaints and no changes were ever made to the lobby flooring, including the carpet or tile, as a result of plaintiff's fall.  And, any reference to testimony that Novotny had difficulty with the flooring project is a mischaracterization.  Upon our review, his testimony centered only on the subfloor preparations required for the tile used in the project, and nothing about the carpet or where these met.  Also, he never testified that he had difficulty laying the tile, but rather, only that the subfloor preparation was modified a bit from the project specifications because of the size of the tiles (*i.e.*, they were large).  Moreover, and ultimately, certificates of completion and occupancy were issued on the project, and plaintiff never testified that she fell because the tile floor itself was not level.

¶ 37    Accordingly, none of this "evidence" cited by plaintiff in her brief on appeal supports her assertion that she proved proximate causation.  Contrary to her argument, the trial court did consider this evidence and found it did not assist her in satisfying her pleading burdens.  Having considered it ourselves, we reach the same conclusion.  None of this "evidence" proves that a dangerous condition existed or caused her fall, either directly or even circumstantially.  Therefore, we find there was no trial court error in the consideration of evidence here.  See *Kellman*, 202 Ill. App. 3d at 974-75 (circumstantial evidence, including condition of shower stall, position of body after fall and medical testimony, was insufficient to raise inference that the decedent's injuries were caused by the defendant's negligence in maintaining stall and basin, as none of this addressed the issue of what actually caused the decedent to slip and fall; thus, entry of summary judgment was proper); accord *Haslett*, 2019

IL App (1st) 181337, ¶ 44 (candy crumbs discovered on skates three days after fall did not comprise sufficient circumstantial evidence that cause of fall was candy on rink); *Barker*, 261 Ill. App. 3d at 1072 (that produce department regularly sprayed fruits and vegetables was not sufficient circumstantial evidence to demonstrate proximate cause where this did not show that there was actually water on the floor and that it caused the plaintiff's fall).

¶ 38    Ultimately, and based on our thorough review of pertinent legal principles, the evidence presented, and relevant case law, we hold that, as plaintiff cannot show with any reasonable certainty that there was a defective condition in the flooring or that any such condition caused her fall, she has failed to prove proximate causation and, thus, summary judgment in favor of defendants was properly granted.[5]

¶ 39    As a final matter, we again note that, in addition to the grant of summary judgment in favor of defendants, plaintiff also appeals from the denial of her motion to reconsider. Briefly, " '[t]he purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law.' " *Cole*, 2018 IL App (1st) 180474, ¶ 51, quoting *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. A ruling on a motion to reconsider is within the sound discretion of the trial court and will not

---

[5] We acknowledge for the record that in their briefs on appeal, plaintiff goes on to argue, and defendants go on to refute, the remaining elements of plaintiff's negligence claim, mainly, duty and breach thereof. However, we need not discuss these, as we have conclusively found that plaintiff cannot show proximate cause. See *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001), citing *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989) ("If the plaintiff cannot establish any one of these elements of her [negligence, slip-and-fall] cause of action, summary judgment in favor of the defendant is appropriate.").

be disturbed absent an abuse of that discretion. See *Cole*, 2018 IL App (1st) 180474, ¶ 51, citing *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002).

¶ 40    In the instant cause, the trial court, in issuing its decision denying her motion to reconsider, noted that plaintiff's initial argument therein was that it had misapplied existing law, namely, the *Kimbrough* decision. In response, the court found that it would render the same decision, particularly as plaintiff was simply rehashing the same assertions while discussing cases she had not cited before. Further, the court noted that plaintiff also presented "many new arguments" in her motion to reconsider, including with respect to duty, all based on existing evidence in the record. In response to this, the court found that plaintiff's "new legal theories and factual arguments are subject to waiver."

¶ 41    On appeal, plaintiff insists in her opening and reply briefs that the basis for her appeal from the denial of her motion to reconsider is, and always was (even in the trial court), only the former of the two arguments, *i.e.*, the misapplication of existing law. Accepting this, as she insists, we hold that, as discussed at length herein, we agree with both the trial court's application of *Kimbrough* and its grant of summary judgment in defendants' favor. Therefore, we find no basis to conclude that the trial court misapplied the law in any way and, likewise, no basis to overturn its denial of her motion to reconsider. See, *e.g.*, *Cole*, 2018 IL App (1st) 180474, ¶ 51 (upon review of denial of motion to reconsider in negligence suit stemming from slip-and-fall on icy stairs, summary judgment in favor of defendant was proper where, as the plaintiff failed to provide an identifiable cause for alleged water accumulation, there was no basis to conclude that trial court misapplied existing law).

¶ 42                                    CONCLUSION

¶ 43        For all the foregoing reasons, we hold that summary judgment in favor of defendants here was proper due to plaintiff's failure to demonstrate the proximate cause element of her negligence cause of action, and that the trial court did not abuse its discretion in denying her motion to reconsider.  Accordingly, we affirm the judgment of the trial court.

¶ 44        Affirmed.